IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION


MACK BROOKS,

     Movant,

v.                                 Case No. 2:16-cv-03207
                                 Case No. 6:12-cr-00059-2

UNITED STATES OF AMERICA,

     Respondent.


## MEMORANDUM OPINION AND ORDER

Pending before the Court is Movant, Mack Brooks' ("Defendant") Motion to Vacate, Set Aside, or Correct Sentence, pursuant to 28 U.S.C. § 2255 [ECF No. 358]. This matter is now assigned to the undersigned United States District Judge and is referred to United States Magistrate Judge Dwane L. Tinsley for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). For reasons appearing to the court, it is hereby **ORDERED** that the referral to the Magistrate Judge is **WITHDRAWN** and the undersigned will proceed to rule on the motion.

## I.    Relevant Procedural History

On January 10, 2012, Jason McClure ("McClure") was arrested in Ohio and charged with possession with intent to distribute approximately 900 oxycodone and

oxymorphone tablets. [*Id.* at 2 and Ex. 1 at 119].[1] On that date, he gave statements to the Ohio State Troopers who arrested him, as well as Drug Enforcement Agency ("DEA") Task Force Officer Herb Shelton ("Shelton").

On February 3, 2012, DEA agents utilized McClure as a confidential informant ("CI") to make a controlled buy of approximately 600 oxymorphone pills from Ciara Dawkins ("Dawkins) and Shavona Starkling ("Starkling") in Wood County, West Virginia, and Dawkins and Starkling were arrested during the controlled buy.[2] [ECF No. 368 at 1]. On February 3, 3012, Defendant was incarcerated on other controlled substance charges in Ohio, but is alleged to have continued running the drug distribution ring from prison, using Dawkins, Starkling, and other females to obtain and deliver the drugs.

On April 2, 2013, Defendant was named in a Second Superseding Indictment charging him with one count of conspiracy to distribute oxycodone and oxymorphone, in violation of 21 U.S.C. §§ 846 and 841(a)(1). [ECF No. 368, Ex. 2].[3] A jury trial was held between July 9 and 11, 2013. At trial and sentencing, Defendant was represented by court-appointed counsel, Deirdre H. Purdy ("Purdy").

A.    **Summary of pertinent trial testimony.**

At trial, Shelton testified that he met with McClure following his arrest in Ohio on January 10, 2012. [ECF No. 368 at 2 and Ex. 1 at 118]. During that meeting,

---

[1] The page citations from the trial and sentencing transcript citeds herein are derived from the CM/ECF docket entry page numbering located at the top of each page of Exhibits 1 and 3. For example, the first page of Exhibit 1 reads "Page 1 of 416."

[2] A third female, Kimberly Wilson, was also in the vehicle, but no drugs were found in her possession and she was not arrested.

[3] The Second Superseding Indictment also charged Defendant with obstruction of justice, in violation of 18 U.S.C. § 1512(c)(2). However, that count was dismissed by the government prior to trial.

McClure admitted that he had been involved in a million-dollar drug distribution scheme and disclosed that he owed his source of supply $4,500. McClure agreed to cooperate with the government and was provided $4,500, which he deposited in two Chase Bank accounts, one of which was in Dawkins' name. [ECF No. 368 at 2 and Ex. 1 at 119-123].

According to Shelton, McClure agreed to the placement of a recording device on his cell phone, which captured recordings between February 1-3, 2012. McClure also agreed to act as a CI for a controlled buy from Dawkins on February 3, 2012. [*Id.* at 123-126]. During Purdy's cross-examination, Shelton admitted that, to his knowledge, McClure had not previously served as an informant for the DEA or any other law enforcement agency, and that he had lied about some of the things they had discussed in his initial interview. [*Id.* at 152-164].

McClure also testified at Defendant's trial, pursuant to a plea agreement, following his guilty plea to one count of conspiracy to distribute oxycodone. However, he had not yet been sentenced on that charge.

McClure told the jury that, at the time of his arrest in January of 2012, he advised DEA agents that he had received the pills in his possession earlier that day from Dawkins, Starkling, and a third female whom he did not recognize. He stated that he had paid between $25,000 and $30,000 in cash when he obtained those drugs, but still owed approximately $4,500. He stated that the DEA provided him with that sum of money, which he deposited into two bank accounts, one of which was in Dawkins' name. He further indicated that he knew Dawkins and Starkling from prior

drug deliveries. McClure confirmed that Defendant was his primary drug source over the two years leading up to his arrest, and that he would meet Defendant and/or various females, including Dawkins and Starkling, on a weekly basis to obtain pills from them. [ECF No. 368 at 3-4 and Ex. 1 at 170-177, 180-182].

McClure testified that "at the beginning [he purchased] maybe 100, 200, and at the end around 1,000 pills." [ECF No. 368 at 3 and Ex. 1 at 176]. He further stated that, after Defendant went to prison, he continued to have contact with him to order pills, which were delivered by Dawkins, Starkling, and other females. [*Id.* at 177-179]. He confirmed that his last communication with Defendant was on February 3, 2012, the date of the controlled buy resulting in Dawkins' and Starkling's arrest. [*Id.* at 179].

McClure further confirmed that he had consented to the placement of a recording device on his cell phone, which captured several recorded phone calls between himself and Dawkins with Defendant "three-wayed" in from prison on all but one of the calls. [*Id.* at 4 and Ex. 1 at 182-185, 193-194]. The recorded calls were played for the jury, while McClure gave explanations as to the meaning and context of some of the conversations. [*Id.* at 4-5 and Ex. 1 at 188-197]. McClure identified Defendant and Ciara Dawkins as the persons to whom he was speaking and clarified that he was to set up the February 3, 2012 drug delivery with Dawkins, who was referred to as "C" on the recording. [*Id.* at 194]. McClure stated that he made arrangements with Dawkins to purchase whatever pills she had left on February 3, 2012. [*Id.* at 5 and Ex. 1 at 197-201].

On cross-examination, McClure suggested that he had paid Defendant over one million dollars during the two-year period he had dealt with him, and he stated there were "four or five or six" different females who delivered pills for Defendant, in addition to Dawkins and Starkling. [*Id.* at 5 and Ex. 1 at 209, 232-233]. Purdy vigorously cross-examined McClure about the quantities and price of the pills he sold in that time frame, about his own drug habit, and she got McClure to admit that he had other sources of supply as well. [*Id.* at 206-217]. She further questioned him about the inconsistencies between his prior statements to the Ohio officers and his trial testimony concerning his travel on January 10, 2012 and the number of women involved in the alleged drug transaction on that date, and about his motivation to testify in order to receive a lower sentence. [*Id.* at 217-222].

Starkling also testified at Defendant's trial pursuant to a plea agreement with the United States. She had previously pled guilty to aiding and abetting possession with intent to distribute oxymorphone and had been sentenced to serve 46 months in prison. [ECF No. 368 at 5-6 and Ex. 1 at 265-267, 288-289]. Starkling stated that, after receiving a call from Defendant and Dawkins, she met Dawkins at a residence in Detroit on February 3, 2012, and received a condom filled with pills, which she inserted into her vagina. Then, she, Dawkins, and another female traveled by car to West Virginia to meet McClure to deliver the pills. However, when McClure got in the car, the police approached and removed them from the vehicle. [*Id.* at 5 and Ex. 1 at 267-275].

Starkling testified that she recognized McClure from at least 10 prior deliveries, which had been arranged by Dawkins and Defendant. [*Id.* at 5 and Ex. 1 at 275]. Starkling confirmed that she had known Defendant and had been making deliveries for him, along with other females, including Dawkins, a couple of times a week since late 2009. She further stated that, on each trip, she was provided pills and was paid cash for delivering them. She further confirmed that, once Defendant was incarcerated, the deliveries continued at his direction by telephone. [*Id.* at 6 and Ex. 1 at 276-285].

On cross-examination, Starkling stated that she did not meet Dawkins until late 2010. [*Id.* at 6 and Ex. 1 at 298]. Purdy also vigorously cross-examined Starkling about her hopes to receive a sentence reduction for cooperating with the government, the fact that she had not previously mentioned speaking with Defendant about the February 3, 2012 delivery, and other inconsistencies between her trial testimony and the statements she had made to law enforcement. [ECF No. 368, Ex. 1 at 304-314, 320-324].

Defendant presented no evidence at trial. Co-defendant Dawkins re-called Task Force Officer Shelton and, during his testimony, Purdy questioned him concerning his discussions with McClure about providing truthful information and conservatively estimating drug amounts. [ECF No. 368, Ex. 1 at 360-371]. She suggested that McClure and Starkling had not been completely truthful. [*Id.*] The jury ultimately returned a guilty verdict against Defendant on the conspiracy count. [*Id.* at 6 and Ex. 1 at 413].

## B. Defendant's Motion for Judgment of Acquittal or New Trial.

On August 7, 2014, four days before his sentencing hearing, Defendant filed a *pro se* "Motion of Judgment of Acquittal and/or Motion for New Trial," in which he claimed that his counsel had provided ineffective assistance of counsel at trial by failing to call the Ohio State Troopers who arrested McClure on January 10, 2012 to impeach his trial testimony. [ECF No. 368, Ex. 4]. The district court took up Defendant's motion at the beginning of his sentencing hearing. The government asserted that the motion was untimely filed. [*Id.* at 3]. Ms. Purdy acknowledged her belief that the *pro se* motion was either untimely or more appropriately made in a post-conviction habeas motion. [*Id.* at 4].

The district court initially found that the court had no obligation to consider Defendant's *pro se* motion because he was represented by counsel, but ultimately denied the motion as untimely under Rules 29 and 33. [*Id.* at 4-7]. The district court specifically found that "[a] Motion for a New Trial predicated on ineffective assistance of counsel must be brought within the 14-day time period, regardless of when the defendant becomes aware of the facts which suggested to him that his attorney's performance may have been constitutionally inadequate . . . ." [*Id.* at 6]. The district court further noted that, Defendant had not presented any newly discovered evidence and "the assertions made by the defendant in his motion demonstrate on their face that he was aware of all the relevant facts during his trial." [*Id.*]

## C. Defendant's sentencing hearing.

Defendant's sentencing hearing took place on August 11, 2014. A Presentence Investigation Report ("PSR") prepared by the United States Probation Office determined that the total offense and relevant conduct attributable to Defendant was 8,153.9 kilograms of marijuana equivalency, based upon the testimony of McClure and Starkling. As relevant here, Defendant objected to the guideline calculation on the basis that McClure's testimony was too unreliable, and that there was no basis for a four-level enhancement for his role in the offense. [ECF No. 368 at 8-9 and Ex. 3 at 8].

The government noted that the proposed relevant conduct calculation had been severely reduced by the probation officer based upon the credible and substantial trial testimony of McClure and Starkling. [*Id.* at 9 and Ex. 3 at 11-13]. The district court noted that the approximately 8,000 kilograms in marijuana equivalency fell within the sentencing range of 3,000 to 10,000 kilograms, "so even if we cut it in half, the range would still be the same[.]" Thus, the district court overruled the objection. The court also specifically noted that it found the testimony of McClure and Starkling to be credible and that, if the jury had not so found, it likely would not have convicted Defendant on the conspiracy count. [*Id.* at 9 and Ex. 3 at 12-13].

Concerning the objection to the four-level role enhancement under section 3B1.1(a) of the United States Sentencing Guidelines ("USSG") for being a leader or organizer of an organization involving five or more participants, Defendant's counsel argued that McClure could not count as one of those participants because he was a

"buyer," not a "seller." She further asserted that McClure had only identified three women who had allegedly engaged in drug sales with him. However, the district court ultimately overruled the objection and found that, based upon McClure and Starkling's testimony, there were at least five people allegedly involved in the conspiracy and that Defendant was a leader of the organization. [*Id.* 10-11 and Ex. 3 at 20-22].

Defendant was also subject to an enhancement for being a career offender under USSG § 4B1.1 because he had prior felony convictions for armed robbery and delivery/manufacture of less than 50 grams of cocaine. Defendant's counsel did not specifically challenge his career offender status. Instead, she argued that Defendant's criminal history was overrepresented and sought a downward departure under USSG § 4A1.3(b), or a variance from the guideline range, both of which were denied.

The court determined Defendant's total guideline level to be 38, with a criminal history category of VI, resulting in an advisory guideline range of 361 months to life in prison. However, Defendant's sentence exposure was capped at the statutory maximum of 240 months. Thus, Defendant was sentenced to 240 months in prison. [*Id.* at 11 and Ex. 3 at 35]. A Judgment to that effect was entered on August 15, 2014. [ECF No. 325].

### D. Defendant's direct appeal.

Defendant filed a Notice of Appeal on August 14, 2014. [ECF No. 324]. Purdy was permitted to withdraw as counsel, and Defendant was represented by new court-

appointed counsel, Stephen D. Herndon. On appeal, Defendant challenged the reasonableness of the drug quantity attributed to him at sentencing based upon the credibility of McClure's testimony, and the district court's denial of his motion for judgment of acquittal or a new trial. Defendant's Judgment was affirmed on April 2, 2015. *United States v. Brooks*, No. 14-4660, 599 F. App'x 85 (4th Cir. Apr. 2, 2015). [ECF No. 368, Ex. 6].

Concerning the reasonableness of the relevant conduct used to calculate his sentence, the Fourth Circuit specifically found:

> Brooks' primary claim on appeal is that the district court erred in determining the drug quantity attributable to him for sentencing purposes. Although Brooks acknowledged that we already upheld the probation officer's calculations in his co-defendant's case, *United States v. Dawkins*, 548 Fed. Appx. 124 (4th Cir. 2014), *cert denied*. ___ U.S. ___, 135 S. Ct. 1014, 190 L. Ed.2d 884 (2015), he claims that the district court erred in basing his relevant conduct "upon information derived from active drug users and addicts," primarily the trial testimony of Jason McClure whose "story changed in a manner to improve the testimony supporting the conspiracy charge and in ways that tended to increase the relevant conduct." [Citation omitted].

> \* \* \*

> Based on our review of the record, we find no clear error in the district court's conclusion that the probation officer arrived at a reasonable and conservative estimate of relevant conduct based on McClure's testimony. Although Brooks attacks McClure's credibility as a "drug user and addict," the district court aptly noted that, in returning a guilty verdict, the jury clearly found McClure credible. *See United States v. Beidler*, 110 F.3d 1064, 1067 (4th Cir. 1997) (providing that credibility determinations are for the trier of fact, not the reviewing court).

*Id.* at 85-86. Concerning Defendant's ineffective assistance of counsel claim, the Fourth Circuit stated:

Brooks also argues that counsel was ineffective for failing to support his pro se motion for a new trial or judgment of acquittal. To the extent that Brooks challenges the district court's denial of his motion as untimely under either Fed. R. Crim. P. 29 or 33, we find no abuse of discretion. Although Brooks suggests that the district court should have construed his motion as a request for substitution of counsel, Brooks clearly requested a new trial or judgment of acquittal in his motion and did not allege any concerns about counsel representing him at sentencing. Thus, there was no basis for the district court to construe his motion as a request for substitution of counsel.

To the extent that Brooks is seeking to raise an ineffective assistance of counsel claim as opposed to challenging the district court's denial of his motion for a new trial or judgment of acquittal, we conclude that the record does not conclusively establish ineffective assistance and thus his claim should be raised, if at all, in a 28 U.S.C. § 2255 (2012) motion.

*Id.* at 86.

### E.    Defendant's section 2255 motion and relevant briefing.

On April 5, 2016, Defendant timely filed the instant Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, asserting that the trial court's determination of his relevant conduct was unreasonable due to "procedural defects surrounding the sentencing hearing." [ECF No. 358 at 4]. Defendant claims that the unreasonableness of his relevant conduct determination, based on McClure's testimony, would have been apparent had his counsel subpoenaed the two Ohio State Troopers who took a prior inconsistent statement from McClure. [*Id.*]

Defendant's section 2255 motion also raises an ineffective assistance of counsel claim grounded in the handling of his motion for judgment of acquittal or a new trial. [*Id.* at 5]. Defendant claims that his counsel "acted as an advocate for the party opponent" by incorrectly contending that his *pro se* claim could only be raised in

habeas corpus. [*Id.*] Thus, Defendant asserts that he was essentially denied the right to counsel at that stage of the proceedings, resulting in the district court's improper denial of his post-trial motion. [*Id.*]

On November 16, 2017, the government filed a Response in Opposition to Defendant's section 2255 motion ("Response") asserting that Defendant has not demonstrated an entitlement to relief on the claims in his motion. [ECF No. 368]. After multiple extensions of time, on June 3, 2019, Defendant filed a "Traverse to United States' Response" ("Reply") [ECF No. 391], raising numerous additional grounds for relief, which will be addressed as necessary *infra*. This matter is ripe for adjudication.[4]

## II. Discussion

### A. Defendant's claims in the section 2255 motion.

At first blush, Ground One of Defendant's section 2255 motion is a re-assertion of his claim challenging the reasonableness of his sentence that was rejected on direct appeal. Defendant is barred from pursuing that claim on collateral review because it was previously litigated. *Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976); *United States v. Roane*, 378 F.3d 382, 396 n.7 (4th Cir. 2004).

However, Ground One also appears to assert a claim of ineffective assistance of counsel grounded in the failure to present evidence to impeach the testimony of

---

[4] On July 11, 2016, the district court also denied Defendant's request for a sentence reduction pursuant to the 2014 amendments to USSG § 2D1.1. [ECF No. 364].

Jason McClure, which played a large role in the determination of Defendant's relevant conduct. Specifically, Ground One of Defendant's motion states:

> [B]asing a sentence on information provided by Jason McClure was substantively unreasonable for the reason that his story significantly changed after he began to cooperate with the government to the benefit of the government and to the detriment of Mack Brooks. Jason McClure's story changed in a manner to improve the testimony supporting the conspiracy charge and in ways that tended to increase the relevant conduct. Despite seeking a subpoena for evidence tending to show the change in McClure's testimony, despite securing that subpoena, despite instructing trial counsel to produce that evidence, despite trial counsel's refusal to do so, and despite trial counsel's refusal to advise the trial court of the disagreement over using the troopers' report to impeach Jason McClure, Mr. Brooks endeavored to raise the issue at sentencing so that it could receive the appropriate consideration by the trial court.

[ECF No. 358 at 4].

Defendant's assertion that his counsel provided ineffective assistance concerning the presentation of impeachment evidence carries over into Ground Two of his section 2255 motion, in which he contends that he was denied the ability to properly assert an ineffective assistance of counsel claim when the trial court considered his Motion for Judgment of Acquittal and Motion for New Trial. Specifically, Ground Two states in pertinent part:

> The process utilized by the trial court in resolving the ineffective assistance of counsel claim deprived Mack Brooks of his right to counsel in litigating the claim. The Sixth Amendment to the United States Constitution requires that a defendant be represented by counsel at all critical stages of a proceeding. The trial court's procedure for the hearing effectively deprived Mack Brooks of his Sixth Amendment right to counsel in his litigation of a claim of ineffective assistance of counsel. Not only was Mack Brooks deprived of his Sixth Amendment right to counsel, but his counsel acted as an advocate for the party opponent in advancing counsel opposition to Mack Brooks' claim of ineffective assistance of counsel, creating a clear conflict of interest. First, trial

counsel focused the trial court on an assertion that a claim of ineffective assistance of counsel could only be raised in a habeas corpus proceeding. Not only was such an assertion in conflict with Mr. Brooks' interest, it was an incorrect assertion of the law. A defendant can raise a claim of ineffective assistance of counsel in three ways: (1) In a motion for new trial based on anything other than newly discovered evidence; (2) On direct appeal if the record conclusively demonstrates that counsel did not provide ineffective assistance of counsel; and (3) By a collateral challenge via motion to vacate the sentence.

[ECF No. 358 at 5]. Defendant provides no further support for either of these claims.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court adopted a two-pronged test to demonstrate a violation of the right to effective assistance of counsel guaranteed by the Sixth Amendment. The first prong is competence; Defendant must show that the representation fell below an objective standard of reasonableness. *Id.* at 687-91. There is a strong presumption that the conduct of counsel was within the wide range of what is considered reasonable professional assistance, and a reviewing court must be highly deferential in scrutinizing the performance of counsel. *Id.* at 688-89.

> In order to meet the first prong, movant must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Id.* at 690. This inquiry is directed at whether defense counsel's representation "amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington v. Richter*, 562 U.S. 86, 105 (2011). "The question is whether counsel made errors so fundamental

that counsel was not functioning as the counsel guaranteed by the Sixth Amendment." *Id.* at 88.

The second prong is prejudice; "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. The court may determine the prejudice prong prior to considering the competency prong if it is easier to dispose of the claim on the ground of lack of prejudice. *Id.* at 697.

Although not directly stated in his motion, at bottom, Defendant claims that Purdy's failure to call two Ohio State Troopers who were involved in Jason McClure's arrest on January 10, 2012, to dispute McClure's credibility was prejudicial to his defense. Defendant contends that the testimony of these two witnesses would have contradicted statements made by McClure at trial, calling into doubt his credibility, and that such impeachment evidence would have altered the district court's determination of the relevant conduct attributed to Defendant at sentencing.

The government's Response asserts that Defendant's ineffective assistance of counsel claim is wholly unsupported by the record, which fails to show that Purdy's performance fell below an objective standard of reasonableness, resulting in prejudice to his defense. [ECF No. 368 at 13-14]. The Response states:

> Specifically, defendant alleges that his counsel failed to impeach McClure with respect to statements made by him at the time of his arrest in Ohio on January 10, 2012. A review of counsel's cross-examination of McClure clearly shows that counsel addressed this during [her] extensive cross-examination. *See* Exhibit 1, Trial

15

Testimony at 245-55 [sic; ECF No. 368, Ex. 1 at 202-233].[5]  Contrary to defendant's unfounded assertion otherwise, it is clear that defense counsel, in her considered judgment, elicited unfavorable facts from McClure, and put forward a defense that McClure had fabricated defendant's involvement to help himself.

In this case, defendant has not shown that calling the Ohio officers who arrested McClure would have created a reasonable probability that the verdict would have been different.  The fact remains that the jury considered the credible testimony of McClure in light of defense counsel's rigorous cross-examination.  It is unlikely that calling the Ohio officers would have had any impact whatsoever on the jury verdict, especially in light of the additional testimony of Starkling. Because defendant has not shown prejudice, this Court need not consider this prong of the *Strickland* test.  *Fields v. Att'y Gen. of Md.*, 956 F.2d 1290, 1297 (4th Cir. 1992).

[ECF No. 368 at 13-14].

In his Reply, Defendant maintains that he asked Purdy to call the officer who arrested McClure to give "testimony about [McClure's] dubious character."  [ECF No. 391 at 8].  Defendant again claims that "[McClure's] statement to the officer at his arrest was a lie [and] he later changed it."  [*Id.*]  Defendant asserts that hearing from the arresting officer would have "shown doubt to [McClure's] truthfulness," but instead, Defendant had "no witness to challenge [McClure's] word."  [*Id.*]  He further claims that this resulted in "[n]o defense by Counsel" and further affected his sentencing, resulting in "extended jail time."  [*Id.* at 8-9].

A review of the record demonstrates that there was ample evidence of Defendant's involvement in the subject drug conspiracy to support his guilt on the conspiracy count of the Second Superseding Indictment.  Furthermore, McClure's

---

[5] Purdy's cross-examination of McClure appears on pages 202-223 of ECF No. 368, Ex. 1.  Pages 223-233, which are cited by the government, contains the cross-examination of McClure by John H. Tinney, Jr., who was Dawkins' counsel.

credibility was sufficiently challenged during his extensive cross-examination. Moreover, Defendant's relevant conduct had no effect on his ultimate sentence. Finally, Ms. Purdy's assertions concerning Defendant's untimely motion for judgment of acquittal and/or motion for new trial did not demonstrate an absence of counsel constituting a structural error.

Thus, under all of the circumstances, the court finds that the testimony of the suggested witnesses would not have made a difference in the outcome of Defendant's criminal proceedings at trial, sentencing, or upon consideration of his post-trial motion. Accordingly, even if Defendant could establish that Purdy's conduct fell below an objective standard of reasonableness, he cannot demonstrate the requisite prejudice to prove a Sixth Amendment violation, and he is not entitled to any relief on the claims in his initial section 2255 motion.

### B. New claims raised in Reply.

Defendant's Reply also asserts six additional claims that were not raised in his initial section 2255 motion and do not relate back to the claims asserted in his initial motion, which were timely filed under 28 U.S.C. § 2255(f)(1). Furthermore, these new claims do not meet the criteria of any of the other subsections of section 2255(f). Thus, they appear to be untimely. Moreover, because these additional claims were not asserted in Defendant's direct appeal, they are likely waived. *See United States v. Frady*, 456 U.S. 152, 165 (1982) ("[W]e have long and consistently affirmed that a collateral challenge may not do service for an appeal."); *Stone v. Powell*, 428 U.S. 465 477 n.10 (1976); *United States v. Emanuel*, 869 F.2d 795 (4th Cir. 1989) (Alleged non-

constitutional errors not raised on direct appeal are conclusively waived and alleged constitutional errors are waived absent a showing of cause and prejudice). Nonetheless, the undersigned will briefly address each additional claim. Because of its impact on other claims, the undersigned begins with a discussion of Defendant's new challenge to his career offender enhancement.

### *Career offender enhancement*

Defendant's Reply asserts that his "Criminal History Points" were "incorrectly applied violating due process." [ECF No. 391 at 5]. However, a thorough review of the Reply suggests that this is really a challenge to Defendant's career offender enhancement under section 4B1.1 of the guidelines. ([ECF No. 391 at 5].

Specifically, Defendant contends, for the first time in any of his proceedings, that his prior armed robbery conviction may not be used as a predicate offense for the career offender enhancement because "he was a juvenile tried as an adult" and because the armed robbery offense is allegedly "not a generic match to the federal crime." [*Id.*] Defendant further contends that his prior drug conviction, which served as the second predicate offense for the career offender enhancement, does not qualify as a controlled substance offense under the guideline definition contained in USSG § 4B1.2(b). In support of these assertions, Defendant cites to the Supreme Court's decision in *Descamps v. United States*, 570 U.S. 254 (2013)[6] (which pre-dates his sentencing), but he provides little else to support his contentions.

---

[6] In *Descamps*, the Supreme Court addressed the proper use of the "modified categorical approach" to determine whether a crime is a "violent felony" under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), which is not at issue herein. However, many defendants cite to this case for the proposition that a crime is broader than the generic version of that crime when used to determine if the crime qualifies as a predicate offense for various sentencing enhancements, including the career offender enhancement.

The undersigned first notes that Defendant's failure to raise this claim in his direct appeal forecloses its review in this collateral proceeding. *See Frady, supra*, 456 U.S. at 165. Furthermore, this claim, which was raised more than three years after Defendant filed his initial section 2255 motion, does not relate back to the claims asserted in the initial motion and, thus, it is untimely. Finally, Defendant's claim that he does not qualify as a career offender is without merit, as both his armed robbery and controlled substance offenses qualify as predicate offenses for the career offender enhancement.

At the time of Defendant's sentencing, USSG 4B1.2(a) defined a "crime of violence" as "any offense under federal or state law, punishable by imprisonment for a term exceeding one year that – (1) has an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or <u>otherwise involves conduct that presents a serious potential risk of physical injury to another</u>." U.S. SENTENCING GUIDELINES MANUAL § 4B1.2(a) (U.S. SENTENCING COMM'N 2012) [emphasis added]. The first part of subsection (2) contains certain enumerated offenses, and the emphasized section is known as the "residual clause." Additionally, Application Note 1 in the guideline commentary includes additional enumerated offenses that qualify as "crimes of violence," including robbery. *Id.* at cmt. n.1.

Even if Defendant's armed robbery conviction did not qualify as an enumerated offense, as he appears to be arguing here, it would qualify under the residual clause of the guideline, which was in effect at the time of Defendant's sentencing and has

not been found to be void for vagueness.  *See Beckles v. United States*, 137 S. Ct. 886 (2017); *United States v. Johnson*, 716 F. App'x 468, 470-72 (6th Cir. 2017).

Additionally, USSG § 4B1.2(b) defines a "controlled substance offense" for the purposes of the guideline as "an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance . . . or the possession of a controlled substance . . . with intent to manufacture, import, export, distribute, or dispense." U.S. SENTENCING GUIDELINES MANUAL § 4B1.2(b) (U.S. SENTENCING COMM'N 2012).  Defendant's prior conviction for delivery/manufacture of less than 50 grams of cocaine certainly meets this definition.

Although Defendant was sentenced to serve two years of probation on this offense, it was punishable by a term of imprisonment of up to 20 years.  *See* Mich. Comp. Laws § 333.7401(1) and (2)(a)(iv); *see also United States v. Taylor*, 301 F. App'x 508, 518 (6th Cir. 2008), *cert denied*, 557 U.S. 945 (2009) (Finding that Mich. Comp. Laws § 333.7401 qualifies as a delivery offense under Michigan law and, thus, also constitutes a distribution offense under the ACCA).  Thus, this court has no doubt it also qualifies as a controlled substance offense under the sentencing guideline.[7] Accordingly, Defendant was properly found to be a career offender, and he is not entitled to any collateral relief on this basis.

---

[7] Courts often draw from the case law analyzing convictions under the guidelines when addressing the same conviction under the ACCA, and vice versa.  *See United States v. Montes-Flores*, 736 F.3d 357, 363 (4th Cir. 2013); *United States v. King*, 673 F.3d 274, 279 n.3 (4th Cir. 2012) ("We rely on precedents evaluating whether an offense constitutes a 'crime of violence' under the Guidelines interchangeably with precedents evaluating whether an offense constitutes a 'violent felony' under the ACCA because the two terms have been defined in a manner that is 'substantively identical.'")

*Failure to charge a federal crime containing a penalty provision*
*and no jury finding as to drug quantity*

Defendant's Reply also contains a new claim based upon the fact that he was charged and convicted of a violation of 21 U.S.C. § 846, which does not contain an independent penalty provision. [ECF No. 391 at 7-8]. He further asserts that his counsel failed to provide a special verdict form to enable the jury to determine the drug quantity to be used at sentencing, and that the district court impermissibly made a drug quantity finding in order to apply the penalty provisions in 21 U.S.C. § 841, in violation of his rights to due process and a fair jury trial. [*Id.* at 1-3]. Again, these claims should have been raised, if at all, in his direct appeal, and were not. Thus, they are waived on collateral review.

Nonetheless, after *Apprendi v. New Jersey*, 530 U.S. 466 (2001),[8] if no drug quantity is alleged in the indictment, a defendant charged with conspiracy to violate 21 U.S.C. § 841(a)(1) is subject to sentencing under 21 U.S.C. § 841(b)(1)(C). *See United States v. Martinez*, 277 F.3d 517, 529-30 (4th Cir. 2002) ("For conspiring under § 846 to violate § 841(b)(1)(C), we now know, in light of *Apprendi* . . . that Martinez faced no mandatory minimum and that he faced a maximum sentence of twenty years' imprisonment."); *United States v. Promise*, 255 F.3d 150, 156-57 (4th Cir. 2001) (en banc) ("Our post-*Apprendi* cases have made it clear that if drug quantity is not alleged in the indictment, the defendant is not subject to a mandatory minimum sentence."). Moreover, the Fourth Circuit has expressly rejected the

---

[8] In *Apprendi*, the Supreme Court held that, "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490.

argument that 21 U.S.C. § 841, which is the provision Defendant is alleged to have violated as the object of the conspiracy, impermissibly allows the sentencing judge, as opposed to a jury, to determine drug quantity. *See United States v. McAllister*, 272 F.3d 228, 232 (4th Cir. 2001).

Count One of the Second Superseding Indictment charged Defendant with conspiracy to violate 21 U.S.C. § 841(a)(1) by knowingly and intentionally distributing quantities of oxycodone and oxymorphone. While Defendant correctly asserts that that Count One of his indictment did not contain any specific drug quantities, under such circumstances, he was properly subject to sentencing under 21 U.S.C. § 841(b)(1)(C), which contains a statutory maximum sentence of 20 years. Defendant's sentence was within the 20-year statutory maximum. Thus, to the extent that he is asserting this claim based upon *Apprendi*, his claim is unavailing.

Further, as noted above, for guideline purposes, it is permissible for the district court to make a finding of the drug quantity by a preponderance of evidence, so long as the quantity results in a sentence within the statutory maximum. *See McAllister*, 272 F.3d at 232. Defendant was sentenced after *United States v. Booker*, 540 U.S. 220 (2005), under an advisory guideline scheme and, as specifically noted by the Fourth Circuit in his direct appeal, the determination of drug quantity for relevant conduct purposes under the guidelines is made by the court using a preponderance of the evidence standard, and not by the jury beyond a reasonable doubt. *Brooks*, 599 F. App'x at 86; *see also United States v. Carter*, 300 F.3d 415, 425 (4th Cir. 2002). Thus,

Defendant's assertions to the contrary lack merit. Nor has he demonstrated that his counsel provided ineffective assistance in this regard.

Defendant's reliance on *Alleyne v. United States*, 133 S. Ct. 2151 (2013), which is cited in his Reply, also provides him no avenue of relief because he was not subject to a mandatory minimum sentence. Moreover, as noted previously herein, Defendant's guideline sentencing range was properly determined based upon the statutory maximum. Thus, the specific drug quantity was immaterial.

Consequently, Defendant cannot demonstrate that his sentence resulted in a fundamental defect or a miscarriage of justice. *See United States v. Foote*, 784 F.3d 931, 932-33 (4th Cir. 2015) (an error in application of an advisory guideline is not a fundamental defect); *see also United States v. Dorsey*, 611 F. App'x 767, 770 (4th Cir. 2015); *United States v. Pregent*, 190 F.3d 279, 283-84 (4th Cir. 1999); *United States v. Mikalajunas*, 186 F.3d 490, 496 (4th Cir. 1999) ("errors in guideline interpretation or application ordinarily fall short of a miscarriage of justice."); *Lester v. Flournoy*, 909 F.3d 708, 715 (4th Cir. 2018) ("*Foote* undoubtedly would bar petition had he been sentenced under the advisory Guidelines."). Accordingly, Defendant has not demonstrated any constitutional or statutory violation based upon his sentence and he is not entitled to any collateral relief on this basis.

### *Four-level enhancement for role in the offense*

Defendant's Reply also addresses the four-level role enhancement he received pursuant to USSG § 3B1.1. Although Defendant challenged this enhancement in his post-trial motion before the district court, he failed to assert this claim in his direct

appeal, and it does not relate back to the initial claims in his section 2255 motion. Consequently, it is either waived on collateral review or is untimely. Nonetheless, even if this claim were reviewable in this section 2255 proceeding, it lacks merit.

Defendant claims that the evidence presented by Jason McClure concerning the number of participants in this drug distribution ring was inconsistent and unreliable. Thus, he contends that the government failed to meet its burden of proof beyond a reasonable doubt. He further asserts that his rights under the Sixth Amendment's Confrontation Clause were violated because each member of the alleged conspiracy did not testify concerning their knowledge of a conspiracy and were not subject to cross-examination. This claim is frivolous.

Again, because this issue involves a guideline enhancement, the level of proof is by a preponderance of the evidence, as determined by the district court. Here, the enhancement is supported by a preponderance of the evidence presented at trial, which the district court found to be sufficiently credible. Accordingly, Defendant is not entitled to any collateral relief on this basis.

### *Application of USSG § 5G1.3*

Next, Defendant's Reply contends, for the first time, that he was denied due process at sentencing because the instant sentence was not run concurrently with his prior Ohio state sentence, which he was serving at the time of the instant offense. His Reply asserts that his state offense occurred during the scope of the conspiracy charged in his federal indictment and that the court used that offense conduct as relevant conduct for his federal sentencing. Consequently, Defendant asserts that

his federal sentence should be imposed pursuant to USSG § 5G1.3(b), not USSG § 5G1.3(a).

However, the district court specifically found that the Ohio offense was not considered as relevant conduct for the instant conspiracy offense. Defendant's PSR further confirms that Defendant's arrest on the Ohio state offense occurred on May 22, 2009, which pre-dates the date range of the conspiracy charged herein. [ECF No. 328 at 13, ¶ 48].[9] Accordingly, Defendant's consecutive sentence on the instant offense was proper under USSG § 5G1.3(a). To the extent that this claim is not waived and could be properly raised at this stage of these proceedings, Defendant is not entitled to any relief on this basis.

### *Amendment 782*

Finally, Defendant's Reply also raises, for the first time, a claim grounded in Amendment 782 to the United States Sentencing Guidelines, which provided a retroactive two-level reduction of all drug sentences. However, Amendment 782 does not impact Defendant's sentence because of his career offender status. *See United States v. Young*, 771 F. App'x 213, 214 (4th Cir. June 11, 2019); *United States v. Lee*, 678 F. App'x 170 (Mar. 7, 2017) (Amendment 782 does not affect career offender guideline range). Accordingly, Defendant's sentence is not based on a sentencing range that has since been lowered and he is not entitled to any collateral relief on this basis.

---

[9] The Second Superseding Indictment charges that the instant conspiracy occurred from October of 2009 until February 3, 2012. [ECF No. 368, Ex. 2 at 1].

## III.    Conclusion

For the reasons stated herein, it is hereby **ORDERED** that Defendant's Motion to Vacate, Set Aside, or Correct Sentence, pursuant to 28 U.S.C. § 2255 [ECF No. 358], including the additional grounds for relief asserted in his Reply [ECF No. 391], are **DENIED** and this civil action is **DISMISSED** from the docket of the court.

The court has additionally considered whether to grant a certificate of appealability.  *See* 28 U.S.C. § 2253(c).  A certificate will not be granted unless there is "a substantial showing of the denial of a constitutional right."  *Id.* § 2253(c)(2).  The standard is satisfied only upon a showing that reasonable jurists would find that any assessment of the constitutional claims by this court is debatable or wrong and that any dispositive procedural ruling is likewise debatable.  *Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683-84 (4th Cir. 2001).  The court concludes that the governing standard is not satisfied here.  Accordingly, the court **DENIES** a certificate of appealability.

The court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented party.

ENTER:    August 27, 2019

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE